## GILLESPIE v LOGE

Ohio Appeals, 1st Dist, Hamilton Co.

Decided Feb 6, 1933

Clifford Brown, Cincinnati, and Charles K. Pulse, Cincinnati, for plaintiff.

Frank S. Bonham, Cincinnati, Chester S. Durr, Cincinnati, and Irvin S. Rosenbaum, Cincinnati, for cross-petitioner Lillian Adams.

Wm. J. Rielly, Cincinnati, Kelley & Remke, Cincinnati, Paul V. Connolly, Cincinnati, Murphy & Murphy, Cincinnati, Schorr, Wesselman & Eyrich, Cincinnati, and John R. Quane, Cincinnati, for defendants.

## OPINION

By HAMILTON, J.

This case is here on appeal and grows out of an action in partition, filed May 18, 1927, by Clara Gillespie, one of the devisees under the will of Anna Kaufmann. The executor and devisees under the will were made parties defendant, among whom was Lillian Adams. The prayer was for partition of seventeen parcels of real estate.

Defendant Lillian Adams filed an answer and cross-petition in the case, in which she set up claim to the fee of three parcels of the land sought to be partitioned; the parcels being 303, 305, and 108 Mill Street, in the village of Lockland, Ohio. Her claim is based on an oral contract claimed to have been entered into with the deceased Mrs. Kaufmann on May 15, 1919, whereby it was agreed in consideration of Lillian Adams living with the deceased and taking care of her during her life and performing other services mentioned in the cross-petition, that the deceased would de-

vise and convey to her the above named property. The cross-petition alleges that she fully performed her part of the contract, but that deceased failed and neglected to devise her the real estate in question.

The facts pleaded by the cross-petition are as follows:

"That on or about the 13th day of May, 1919, said Lillian Adams entered into a verbal agreement with one Anna Kaufmann, now deceased, and under whose last will and testament plaintiff and other defendants herein are claiming, in consideration that the said Lillian Adams and her husband, Bert Adams, would give up their home, and would live with said Anna Kaufmann during the rest of her natural life, and care for her in sickness, look after her real estate and repairs needed therefor, and collection of rents therefrom, and the payment of bills thereon, assisting and advising in the purchase and sale of real estate, and the sale and purchase of securities, aiding her in banking her money, and making trips to her safety deposit box for her at such times as she requested the same, together with the payment of bills of the grocery business in which the said Anna Kaufmann was engaged, perform the housekeeping in said Anna Kaufmann's home, and cleaning and clerking in her grocery store, and making such wearing apparel as she requested, assisting the said Anna Kaufmann to dress and undress, bathe her and attend to her at all times, and provide for her individual wants and needs, and in consideration of like services rendered one Joseph Kaufmann, husband of the said Anna Kaufmann, and the said Anna Kaufmann, during his lifetime, she the said Anna Kaufmann, would prepare and execute her last will and testament, and by it she would devise to this cross-petition plaintiff, Lillian Adams, three certain pieces of real estate known as the Griffith, Goodwin and Carson properties, all located on Mill Street, Lockland, Ohio, said three certain pieces of real estate being described as follows:"

The main defense to the cross-petition is the bar of the statute of frauds; that the services were susceptible of measurement by pecuniary standard; and that the cross-petitioner's remedy is at law for the value of the services rendered. It is further claimed that the cross-petitioner having accepted her interest as a devisee to the other parcels of real estate, she is estopped to assert the present claim.

The case of **Kling, Admr., etc. v Bordner,** 65 Oh St, 86, and **Newbold et v Michael et,** 110 Oh St, 588, construing the statute of frauds and the law applicable to such cases are largely relied upon by those opposed to the enforcement of the contract in equity. Those cases, however, recognize that a court of equity will enforce a contract under the doctrine of part performance.

In the Newbold case the power of a court of equity to enforce the contract was again recognized as the law of Ohio, but denied relief on the ground and on the sole ground that there was nothing so unusual in the character of the services rendered as to justify granting specific performance. The court states in the opinion:

"While both cases, Shahan v Swan, and Kling v Bordner, supra, recognize that suits in equity may sometimes be maintained where parol promise and performance may take a case out of the statute of frauds (as indicated in the authorities above cited), yet the conclusions in both these cases exclude the application of such doctrine in such a case as is disclosed by this record.

"Entertaining these views, we are constrained to the conclusion that there is not sufficient in this record to enable us to determine that the services rendered by the plaintiff below were of such peculiar character and nature that they could not be measured by pecuniary standard, and that it would work no fraud upon the plaintiff below if she were denied specific performance of this parol agreement, but remitted to such compensation as she would be entitled in law."

The conclusion on the question of whether or not the services rendered by Lillian Adams to Mrs. Kaufmann were of such a nature as could be measured by pecuniary standards is determinative of this case. While some other questions, which will be mentioned later, are in the case, we do not consider them controlling.

This leads us to the question of the character of the services rendered, as disclosed by the record.

Lillian Adams was a niece of Mrs. Kaufmann. Mrs. Kaufmann and her husband Joseph Kaufmann, during the life of Joseph Kaufmann, lived in a property owned by him in which was a grocery store on the first floor front, and this is one of the properties in question here. Lillian Adams, the niece, was in the family of Joseph Kaufmann from the time she was a child and performed services of the character set forth in the cross-petition as having been rendered to both Mr. and Mrs. Kaufmann. Mr. Kaufmann died in 1918, devising all

the real estate to his surviving widow, Mrs. Anna Kaufmann. Prior to the death of Mr. Kaufmann, Lillian Adams married and had established a home with her husband elsewhere in the city, but returned daily to the Kaufmann home, continuing her services. In settling the estate of Joseph Kaufmann, Lillian Adams and her husband signed a release of all claims against the estate of Joseph Kaufmann for services theretofore rendered to the Kaufmanns, and entered into an agreement to live with Mrs. Anna Kaufmann. This agreement is important as showing that Anna Kaufmann and Lillian Adams (and her husband) were dealing on a contractual basis, and not on account of any family relation.

### · AGREEMENT

"Whereas, Lillian Adams and Burton Adams, her husband, of Lockland, Hamilton County, Ohio, have, for a long time past lived with Anna Kaufmann and Joseph Kaufmann, her husband, at the Kaufmann residence on the east side of Mill Street, in the village of Lockland, Hamilton County, Ohio, without any consideration such as board, etc., and the said Lillian Adams and Burton Adams, have not received any compensation for residing in said Kaufmann residence, and,

"Whereas, the said Joseph Kaufmann has lately died and it is the desire of the parties hereto that the same arrangement of living together shall be, continued, so long as mutually satisfactory.

"Now, Therefore, it is hereby agreed by and between the said Lillian Adams and Burton Adams, her husband, parties of the one part, and Anna Kaufmann, party of the other part, that the said Lillian Adams and Burton Adams shall continue to live in the Kaufmann residence without compensation from the said Anna Kaufmann and that the said Lillian Adams and Burton Adams, her husband, shall not be charged with any expense for so living by the said Anna Kaufmann and that this arrangement shall continue so long as mutually agreeable; whenever any of said parties are dissatisfied with said arrangement they shall be at liberty to discontinue same and neither party shall be indebted to the other in any manner or nature whatsoever.

"Witness our hands this 27th day of August, 1918.
"Witness
   "Clifford Brown
      "Anna Kaufmann
      "Burton Adams
      "Lillian Adams"

This agreement is of the date of August 27, 1918. Pursuant to this agreement, the Adamses established themselves in the store and home property with Mrs. Anna Kaufmann. It appears that the husband of Lillian Adams was an industrious man, and had a business of his own. It will be noted that the agreement provided: "this arrangement shall continue so long as mutually agreeable."

In May, 1919, the Adamses became dissatisfied and arranged to move to Reading, Ohio, and had rented a house into which to move. Mrs. Kaufmann upon learning of this was very much distressed, and pleaded with the Adamses and asked others to urge them not to leave her. She was an aged woman, near seventy years at this time. The evidence discloses that thereupon an oral contract was made, by which Mrs. Kaufmann, in return for the services claimed to have been rendered, agreed to give the property in question to Lillian Adams, the cross-petitioner. Lillian Adams thereupon surrendered the Reading property, and continued in the home of Mrs. Kaufmann. Mrs. Adams continued to render the services claimed until the death of Mrs. Anna Kaufmann on February 27, 1927.

In the fall of 1926, the Adamses again became dissatisfied, and arranged to remove to Glendale. There is some evidence to the effect, and the reasonable inference is, that Mrs. Kaufmann not having conveyed the properties to Mrs. Adams, the Adamses concluded they were not sufficiently protected. They had already removed two loads of goods when Mrs. Kaufmann called in a notary public, a resident across the street from her store and home, and signed some deeds. What deeds these were or what they conveyed is not disclosed and no copy is in the record. At that time she had the notary draw up the following memorandum:

"November 4, 1926.
Mr. Cliff Brown:
As my attorney I direct you to at my death deed to Albert Heimert, the lot on Central ave., Lockland, I purchased from Dollman and deed to Lillian Adams, these properties known as the Goodwin Griffen and Carson, all of which are located on Mill Street, Lockland. As payment in full for services rendered my husband, Joseph Kaufmann, and myself during our lifetime.
          Anna Kaufmann."

She signed this memorandum, showed the

same to Mrs. Adams and a witness in the case, stating she hoped this would satisfy the Adamses and they would remain with her.

It is the paper writing that the cross-petitioner claims to be a memorandum in writing sufficient to comply with the requirements of the statute of frauds as to a memorandum, if that is necessary to determine the case in her favor.

Counsel in the brief for the cross-petitioner urges that the paper writing is a sufficient memorandum or note of the agreement to satisfy the statute of frauds. It was executed and signed by Anna Kaufmann on November 4, 1926. It was addressed to her attorney, Clifford Brown, and directed him, at her death, to deed the properties, describing them sufficiently to be located with certainty. She names the consideration. In so far as the power of Brown to carry out the direction by executing the deeds is shown, he would not have that power under the law. But to satisfy the statute, no formality is necessary. It recognizes that she desires to convey to Lillian Adams the property, described sufficiently for location, and the consideration therefor, and while the memorandum does not indicate an intention to devise the property by will, it is a memorandum in writing indicating an agreement, by which Lillian Adams is to have these properties for the services mentioned in the memorandum. However, we do not rest our decision on this proposition. In passing, we will say that this memorandum is strong evidence supporting the oral contract claimed.

The genuineness of the paper writing was challenged by those opposing the cross-petitioner, but the evidence was overwhelming as to the genuineness of the memorandum and the signature thereto.

Upon showing this memorandum to Lillian Adams and her husband, they continued in the home and returned the goods that had been removed to Glendale. It is reasonable to suppose from the evidence adduced that they were of opinion that the paper writing would protect Mrs. Adams after the decease of Mrs. Kaufmann in her contract with her for services rendered, and this fact induced her to complete performance of the contract.

We now return to the analysis of the character of the services rendered to ascertain whether or not they were susceptible of being measured by pecuniary standard.

The services rendered by Lillian Adams to Mrs. Kaufmann are not disputed. She gave up her separate home with her husband in 1918 to go to the home of Mrs. Kaufmann, for the purpose of caring for her and her business. She took care of the house; was a companion to Mrs. Kaufmann; she took care of the store and trade in large part; she did Mrs. Kaufmann's banking; she paid the bills of the store and did the purchasing; she bathed and nursed Mrs. Kaufmann during her lifetime. In fact while it may not be considered as a part of the consideration of this action, the evidence discloses that Lillian Adams gave a lifetime of service to Mrs. Kaufmann. She gave up her separate home with her husband three times, at the urgent request and under the contractual arrangement which has been clearly shown in this case.

It is suggested, as the court said in the Kling case, supra, that the claim for services Mrs. Adams rendered would be at law to recover the value of her services. Were she thus limited, a large part of the compensation would be barred by the statute of limitations, since her services continued for more than nine years, and this may be an added ground justifying equitable relief. If the services rendered in this case could be measured by pecuniary standard, we can conceive of no case where they could not be so measured. The services covered a period of nine years, some rendered in day time, some at night; some commercial, some companionship, some nursing, some bookkeeping, some rendered on Sunday and legal holidays; some were sewing, some dressing and undressing, bathing, cleaning, clerking, making wearing apparel, assisting and advising in the purchase and sale of real estate and securities, looking after her real estate, collecting rents, and nursing and caring for her in sickness. How could there be measurement of such services by any pecuniary standard?

On the question of estoppel, it is sufficient to say that Mrs. Adams, though not necessary, duly reserved her rights in the properties in question upon receipt of her share of the estate.

Our conclusion is that, the contract is clearly and sufficiently established that the services were such as could not be measured by any pecuniary standard; that if necessary to support the contract, there be a memorandum, we are of opinion that the memorandum is sufficient to satisfy the statute.

We find the cross-petitioner has shown a clear right to relief by strong and convincing proof of the contract and performance thereof by her, and for a court of equity

to deny relief would be aiding in the perpetration of a fraud upon her.

The statute of frauds is not to be used as a sword in the commission of a fraud, but is available only as a shield to prevent it.

We find that the cross-petitioner is entitled to the relief prayed for in her cross-petition. A decree may be presented, decreeing the properties in question to her.

ROSS, PJ, and CUSHING, J, concur.

## ON REHEARING

Decided Jan 22, 1934

Froome Morris, Cincinnati, and William E. Rielly, Cincinnati, for the motion.

Frank S. Bonham, Cincinnati, Chester S. Durr, Cincinnati, and Irwin S. Rosenbaum, Cincinnati, contra.

By THE COURT

After the decision was announced in this case, Froome Morris was employed as counsel, representing some of the interested parties and filed a motion for a rehearing and for a new trial.

The only question raised by the brief in support of the motion, not covered at length in the original opinion, rendered in this case, bears on the question of election. The court in the original opinion did not discuss the question at length, as it did not consider that the plaintiff had lost her right to enforce the contract, by reason of any election. In the brief in behalf of the motion, counsel urges that since Lillian Adams accepted a legacy of $500.00 bequeathed to her in the will, and had received a distributive share of other real estate, that she was thereby estopped to maintain this action on her claimed contract. We have re-examined this question and are unable to see how Lillian Adams can be estopped to maintain the present action by accepting the legacy and a distributive share of the real estate not in controversy. At the time she accepted the legacy, in her receipt therefor, she specifically reserves her right to enforce the contract in the action then pending. The will did not specifically devise any real estate. After bequeathing certain legacies, the testatrix devised her other property in a residuary clause. If this property was in equity the property of Lillian Adams, the testatrix would have had no right or power to devise the same, since in equity it belonged to Lillian Adams. Therefore, it could not be the subject of an election.

There was no suggestion in the will of any election being necessary in order to receive the legacy.

Our conclusion is, that Lillian Adams was not bound to make an election in receiving the bequest under the will.

It may be that the testatrix did not consider that she owned the property under contract to Lillian Adams in disposing of the residue of her estate.

We conclude that Lillian Adams is not estopped to maintain this action. This conclusion is supported by Page on Wills, 6th Edition, §1196, page 1994; Pomeroy Equity Jurisprudence, page 899; **Bebout v Quick, 81 Oh St, 196; Church v Church, Exrx. et, 57 Oh St, 561, at 580.**

From this re-examination the court is content with the decision heretofore rendered, and the motion for a new trial is overruled.

HAMILTON, PJ, CUSHING and ROSS, JJ, concur.